**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 12-113-DLB**

**DEBORAH AND HAROLD BINGHAM**                                    **PLAINTIFFS**

**vs.**                    **MEMORANDUM OPINION AND ORDER**

**INSIGHT COMMUNICATIONS MIDWEST, LLC**                    **DEFENDANT**

*** *** *** ***

## I.  INTRODUCTION

Deborah and Harold Bingham bring this negligence action against Insight Communications Midwest, LLC to recover damages stemming from a car wreck involving Ms. Bingham and Scott Justice, an alleged "business invitee" of Insight.  In short, the Binghams allege that Insight hosted a golf outing and party in May 2011 where alcohol was provided free-of-charge.  One of Insight's employees, Shelly Mueller, organized and attended the event, and consumed alcohol throughout the day.  At the end of the evening, Mueller realized she was too intoxicated to drive home, so she asked Justice to drive her. On the way to Mueller's residence, Justice allegedly failed to yield to Ms. Bingham's vehicle causing an accident.  The Binghams attempt to hold Insight liable for that accident. However, for reasons explained below, Insight's relationship to the accident is simply too tenuous to provide any legal basis for recovery, and therefore Insight is not liable to the Binghams.

This matter is before the Court on Insight Communication's Motion to Dismiss (Doc. # 7), which has been fully briefed (Docs. # 9, 10, 11).  On October 10, 2012, the Court held oral argument on Insight's Motion.   Justin Lawrence appeared on behalf of Plaintiffs Deborah and Harold Bingham; Brian Gudalis appeared on behalf of Defendant Insight Communications Midwest, LLC.  The hearing was recorded by Official Court Reporter Lisa Wiesman.  At the conclusion of the hearing, the Court ordered the Motion submitted.  By this Memorandum Opinion and Order, the Court **grants** Insight's Motion to Dismiss.

## II.  FACTUAL BACKGROUND

On May 12, 2011, Insight held a golf outing in the Northern Kentucky area for its employees, business partners, and customers. Following the golf outing, Insight also sponsored an event at Barleycorn's Restaurant in Florence, Kentucky.  According to the Complaint, Insight supplied alcohol free-of-charge to all who attended both events and encouraged its consumption.

Shelly Mueller, an Insight employee, took part in organizing the events on that day, and attended the golf outing and event at Barleycorn's as part of her employment.  The Binghams allege that Mueller consumed alcohol throughout the day and was "under the influence of alcohol" by 6:00 p.m. that evening.   At approximately 6:10 p.m., Mueller decided it was time to head home to her two children.   Realizing that she was too intoxicated to drive, she asked Scott Justice, a "business invitee" of Insight, to drive her home.  Justice agreed, and the two left Barleycorn's in Mueller's Mercedes Benz.

Justice pulled out of the Barleycorn's parking lot onto Old Toll Road in Florence, Kentucky.  After driving a few hundred feet, Justice attempted to turn left onto U.S. Highway 42.  As he did so, he crashed Mueller's Mercedes Benz into the vehicle driven by

Ms. Bingham.  A police report from the incident stated that the Mercedes Benz failed to yield the right-of-way to Bingham's vehicle.  The Complaint also alleges that Justice was not licensed to drive in any state at the time of the accident.  Notably, however, the Complaint does not allege that Justice ever consumed alcohol on May 12, 2011, or that he was otherwise impaired.

Deborah and Harold Bingham filed the instant action against Insight to recover damages they suffered as a result of the accident.  Deborah alleges that she suffered physical injuries and property damage.  She also alleges that she has suffered a permanent diminution in her economic earning capacity and may lose her job as a result of the physical and mental injuries she sustained.  Based on Deborah's physical and mental injuries, Harold alleges that he suffers a permanent loss of consortium.

The Binghams allege that each of these injuries were directly and proximately caused by the "actions, inactions and inadequate conduct" of the "Defendant(s)."  (Doc. # 1, at 7).  The use of the plural is misplaced, particularly because Insight is the only named Defendant in this case.  Nonetheless, the Binghams allege the following specific conduct by the "Defendant(s)," which they contend amounts to negligence:

a)      Defendant(s), jointly and/or individually, failed to provide alternative transportation to their employee/agents and/or as well as their business invitees;

b)      Defendant(s), jointly and/or individually, failed to instruct their employees, agents, and business invitees as to the company's policy forbidding drinking of alcohol during business activities;

c)      Defendant(s), jointly and/or individually, failed to provide, promulgate or employ rules restricting driving by business invitees or agents or employees post enticement of alcoholic beverages;

d)      Defendant(s), jointly and/or individually, did not provide a pre-departure breathalyzer for its employees, agents, and/or business invitees;

e)      Defendant(s), jointly and/or individually, failed to place into effect a rule, policy, or procedure wherein their agents, employees, and/or business invitees would be transported by a licensed driver upon departure of a company sponsored event involving alcohol consumption;

f)      Defendant(s), jointly and/or individually, gave cross signals or no direction whatsoever in seeking to prohibit, control or minimize the mixing of alcohol consumption with transportation to, during and/or from a company sponsored event(s);

g)      Defendant(s), jointly and/or individually, placed no limit on alcohol consumption by its agents, employees, or business invitees at the Defendant(s) golf outing and subsequent party at Barleycorn's [on] May 12, 2011;

h)      Defendant(s), jointly and/or individually, failed to follow, acknowledge, or instruct its employees, agents, and/or business invitees relative to the statutes, laws, and regulations involving driving without a license and permitting or allowing transport to, form or during company sponsored outings between clients, agents, employees, and/or other business invitees of the Defendants.

(*Id.* at 5-6).

### III.  ANALYSIS

At oral argument, the Binghams clarified that they allege Insight is liable for their injuries under two legal theories.  First, they assert that Insight's negligence was the proximate cause of their injuries.  Second, they allege that Shelly Mueller negligently entrusted her vehicle with Scott Justice, and that Insight is liable for her actions under a *respondeat superior* theory.  However, as explained below, Insight is not liable under either theory.

### A.      Standard of Review

Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of

4

the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In reviewing a Rule 12(b)(6) motion to dismiss, this Court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [his] factual allegations as true.  When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citations omitted).  The Court, however, is not bound to accept as true unwarranted factual inferences, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), or legal conclusions unsupported by well-pleaded facts. *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 950 (6th Cir. 1990).  Furthermore, *pro se* complaints are held to less stringent standards than those drafted by attorneys. *Wagenknecht v. United States*, 533 F.3d 412, 415 (6th Cir. 2008) (quoting *Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983)).

To survive a motion to dismiss, the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, but it must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  To satisfy this standard, the complaint must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## B.   The Complaint alleges insufficient facts to establish that Insight was negligent

Although they list eight separate bases for their negligence claim, the Binghams essentially allege that Insight was negligent in two respects: (1) Insight failed to monitor

and control the consumption of alcohol by its employees and guests; and (2) Insight failed to provide or otherwise ensure that employees and guests who were intoxicated had an alternative means of transportation from the event.  As a result of these failures, the Binghams assert that Mueller became intoxicated and was "unable to reasonably calculate the dangers of allowing an unlicensed business invitee to operate her motor vehicle at the conclusion of [the] business event."  (Doc. # 9 at 3).  The Binghams contend that these "actions, inactions and inadequate conduct were the legal and proximate cause of Plaintiff(s) damages."  (Doc. # 1 at 7).

In its Motion to Dismiss, Insight argues that it did not have a legal duty to the Binghams to monitor the amount of alcohol consumed by its employees and guests, nor did it have a duty to provide alternative transportation to its intoxicated guests.  The Binghams respond that Insight did, in fact, have both duties.  In asserting this legal principle, the Binghams fail to cite any Kentucky law, but cite only to cases from other jurisdictions.  Moreover, at oral argument, the Binghams contended that Kentucky's limited case law on this issue was inapplicable to this case.  Specifically, the Binghams argued that Kentucky law has only addressed the liability of "social hosts," but has yet to address the liability of an employer who provides alcohol to employees as part of a business event.  Ultimately, while cases from other jurisdictions may be persuasive, this Court's determination is controlled by Kentucky law.  Although Kentucky law is sparse in this area of negligence jurisprudence, it does address the issues presented in this case.

### 1.     Duty to monitor and control the consumption of alcohol

The Kentucky Supreme Court first addressed the liability of those who provide alcohol to their guests in the 2005 case, *Grand Aerie Fraternal Order of Eagles v.*

*Carneyhan*, 169 S.W.3d 840 (Ky. 2005).  The Court began with the general proposition that "an actor whose conduct has not created a risk of harm has no duty to control the conduct of a third person to prevent him from causing harm to another." *Id.* at 849.  Simply put, individuals are generally not liable for their nonfeasance or failure to act. *Id.*  However, the Court acknowledged that a duty to control a third person might arise where "a special relation exists between the actor and the third person." *Id.*  In determining whether a special relationship exists, the Court emphasized that the "alleged tortfeasor's *ability to control* the person causing the harm" is of primary importance. *Id.* at 851.  The Court then cited an employer/employee relationship as a "special relationship" that would potentially create a duty to act because "the employer has a real means of control over the employee which, if exercised, would meaningfully reduce the risk of harm." *Id.* at 852.

The defendant's ability to control the alleged tortfeasor does not, by itself, create a duty to control the tortfeasor.  As the Kentucky Court of Appeals stated, "'the foreseeability of the injury [also] defines the scope and character of a defendant's duty.'" *Wilkerson v. Williams*, 336 S.W.3d 919, 923 (Ky. App. 2011) (quoting *Norris v. Corrections Corp. of America*, 521 F. Supp. 2d 586, 588 (W.D. Ky. 2007)).  In fact, "'[t]he most important factor in determining whether a duty exists is foreseeability.'" *Id.* (quoting *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003)).

The Kentucky Court of Appeals has twice applied this foreseeability inquiry in the social host context.  In *Wilkerson v. Williams*, the court considered whether a social host was liable for its drunken guest who punched another guest in the face.  *Wilkerson*, 336 S.W.3d at 923.  The court held that the social host was not liable in that circumstance because it was not foreseeable that a drunken guest would punch another guest in the

face.  *Id.*  Similarly, in *Martin v. Elkins*, the Kentucky Court of Appeals considered whether a social host negligently allowed intoxicated minors to leave the premises.  *Martin v. Elkins*, – S.W.3d – , No. 2011-CA-862-MR, 2012 WL 3762419, at *1 (Ky. App. Aug. 31, 2012). In *Martin*, a homeowner allowed minors to consume alcohol at his residence.  *Id.*  One of the intoxicated minors left the residence and got in a fight with another minor, causing injury.  *Id.*  The Court of Appeals held that the ensuing fight was not foreseeable to the social host, and therefore the social host owed no duty to the injured minor.  *Id.* at *3.

The Court must determine whether Insight owed the Binghams a duty of care in this instance.  Whether a party has a duty of care is a question of law.  *See Mullins v. Commonwealth Life Insurance Co.*, 839 S.W.2d 245, 248 (Ky. 1992).  Insight, as the employer, certainly had a special relationship with Mueller, an employee, that could potentially create a duty to prevent Mueller from causing harm to third parties.  The Kentucky Supreme Court recognized the employer's unique ability to exercise effective control over its employees in *Carneyhan*. *See Carneyhan*, 169 S.W.3d at 851.  However, as *Wilkerson* and *Martin* make clear, the Court's analysis does not end there; it must turn to the foreseeability of the Binghams' injuries.  The Complaint alleges that Insight served or encouraged Mueller to become intoxicated.  Once intoxicated, Mueller asked an unlicensed driver to take her home; however she was unable to appreciate the dangers of allowing the unlicensed driver to drive her home because of her intoxication.  In turn, the unlicensed driver failed to yield the right-of-way and collided with the plaintiffs' vehicle, causing injuries.  Despite the Binghams' contentions, this injury was certainly not the foreseeable result of Insight's failure to monitor Mueller's alcohol consumption.  Because a duty only applies when the injury is foreseeable, *Isaacs v. Smith*, 5 S.W.3d 500, 502 (Ky.

8

1999), and the manner in which the Binghams were injured was not foreseeable, Insight owed no duty to the Binghams in this case.

The cases cited by the Binghams do not compel a different conclusion.  At oral argument, the Binghams argued that *Chastain v. Litton Systems, Inc.*, 694 F.2d 957 (4th Cir. 1982) supports their position that Insight was directly negligent.  Applying North Carolina law, the *Chastain* Court recognized a distinction between the liability of a social host who serves alcohol to its guests and the liability of an employer who serves employees alcohol in furtherance of its business interest.  *Id.* at 961.  Under North Carolina common law, a social host is not liable for the actions of its intoxicated guests.  *Id.* at 960.  However, an employer may be liable for the actions of its intoxicated employees "if it failed to exercise ordinary care in furnishing, or permitting its employees to furnish, alcoholic beverages to [an employee] knowing that [she] has become intoxicated."  *Id.* at 962.  The Binghams argue that Kentucky law has not addressed a business's liability under these circumstances, and therefore *Chastain* must guide the Court's analysis.  The Court disagrees.

Contrary to the Binghams' contention, *Chastain* does not compel the Court to allow the Binghams to proceed on their direct negligence claim.  First, North Carolina law, as outlined in *Chastain*, is inconsistent with Kentucky law.  As Kentucky court's have recognized, a "social host" might be liable for the actions of its intoxicated guests so long as the host had some means of control over the guest and the manner of the third party's injury was foreseeable.  *See, e.g., Wilkerson*, 336 S.W.3d at 923. The Kentucky Supreme Court has cited the employer/employee relationship as one example where the "host" might be liable.  *Carneyhan*, 169 S.W.3d at 851.  Simply put, Kentucky courts have not

9

recognized North Carolina's distinction that "social hosts" are never liable, while employers might be liable.  For that reason, *Chastain* is inapplicable.

Even if *Chastain* was consistent with Kentucky law, the Complaint fails to plead sufficient facts to show that Insight was negligent.  According to the *Chastain* Court, an employer is liable "if it failed to exercise ordinary care in furnishing, or permitting its employees to furnish, alcoholic beverages to [an employee] knowing that [she] has become intoxicated."  *Id.* at 962.  Here, the Complaint does not allege that Insight served Mueller alcohol knowing that she had become intoxicated.  Instead, the Complaint states that Mueller was intoxicated at 6:00 p.m. and left Barleycorn's at 6:10 p.m.  There are no allegations that Mueller was served a drink during that ten minute interval, or at any other time when Insight *knew* Mueller was intoxicated.  Therefore, these allegations are insufficient to hold Insight liable under the law announced in *Chastain*.

The Binghams also rely on two Washington cases, *Dickinson v. Edwards*, 716 P.2d 457 (Wa. 1986) and *Halligan v. Pupo*, 678 P.2d 1295 (Wa. 1984), for their position that Insight was negligent.  However, neither of these cases are applicable here.  In *Halligan*, the Washington Supreme Court held that if an "injured party pleads and proves that alcohol was furnished to an obviously intoxicated person, the furnisher may be found liable for the injuries and damages proximately caused by the intoxicated consumer."  *Halligan*, 678 P.2d at 1297.  In *Dickinson*, the Washington Supreme Court extended this rule and stated that the furnisher is liable if it "knew or should have known in the exercise of reasonable care, that the drinker was intoxicated."  *Dickinson*, 716 P.2d at 819.  Moreover, the important inquiry is whether the intoxicated individual was served alcohol when she was *obviously* intoxicated.  *Id.*  Here, the Complaint does not allege that Mueller was ever

10

furnished alcohol *once she became intoxicated*, and it certainly does not allege that she was served alcohol when she was obviously intoxicated.  Instead, it states only that she knew she was intoxicated at 6:00 p.m. and left at 6:10 p.m.  As a result, these allegations do not amount to negligence under *Halligan* and *Dickinson*.

The cases cited by the Binghams are also factually distinguishable for an additional reason.  In each of the cases, the courts considered whether an employer/social host was liable for an intoxicated employee/guest who later drove a vehicle and injured a third party.  Here, it was Justice, a guest who never consumed alcohol that was driving at the time of the accident.   Mueller, the intoxicated employee, was only potentially negligent to the extent she entrusted her vehicle in Justice.  None of the cases cited by the Binghams have recognized liability under these circumstances.  The Binghams have not cited a single case holding an employer liable for furnishing alcohol to an employee which causes the employee to negligently entrust her vehicle with third party who later causes an accident.  As a result, the Binghams have failed to show that Insight owed them a duty under a Kentucky law.  Accordingly, the negligence claim against Insight shall be dismissed.

### 2.   Duty to ensure that employees and guests had a safe means of transportation from Insight's business function

In their Complaint, the Binghams assert that Insight had a duty to ensure that its intoxicated guests and employees had a safe means of transportation home.  They further allege that Insight failed to act on this duty which proximately caused their injuries.  Insight argues that no such duty exists as a matter of law.  The Binghams appear to concede this point as they do not argue or cite any case law in their Response that such a duty exists.  Upon review, Kentucky case law appears silent on this issue.

11

The Court finds no other jurisdiction that creates an affirmative duty for social hosts to provide their intoxicated guests with safe transportation.  In fact, of those jurisdictions that have decided the issue, they have uniformly refused to recognize such a duty.  *See, e.g., Whittaker v. Jet-Way Inc.*, 394 N.W.2d 111 (Mich. Ct. App. 1986) (affirming summary judgment on claim that the defendant breached duty to provide alternative transportation to its invitees who were too intoxicated to safely operate an automobile because no such duty exists under Michigan law); *DeBolt, et al. v. Kragen Auto Supply, Inc.,* 182 Cal. App. 3d 269 (Cal. Ct. App. 1986).  Instead, where jurisdictions impose some duty on social hosts, that duty is limited to *preventing* intoxicated guests from causing harm to third parties either by monitoring their consumption of alcohol or preventing them from driving. *See, e.g. Millross v. Plum Hollow Golf Club*, 413 N.W.2d 14, 25 (Mich. 1987) (holding that "the special relationship between employer and employee does not of itself require the employer to protect third parties from off-premises liability, either by supervising the consumption of alcohol or providing alternate transportation); *Wiener v. Gamma Chapter of Alpha Tau Omega Fraternity*, 485 P.2d 18 (Or. 1971) (holding that social host had duty to refuse to serve alcohol to intoxicated guest); *Kelly v. Gwinnell*, 476 A.2d 1219, 1214 (N.J. 1984) (recognizing a duty not to furnish alcohol to guest who is known to be intoxicated and will thereafter be operating a motor vehicle); *Pirkle v. Hawley*, 405 S.E.2d 71, 74-75 (Ga. App. 1991) (same).  Ultimately, jurisdictions appear unwilling to impose an affirmative duty on social hosts to provide alternative transportation to their intoxicated guests.  The Court sees no reason why Kentucky would deviate from this uniform approach.  As a result, Insight did not owe the Binghams a duty to provide its intoxicated guests with alternative transportation.

**C.    The Complaint alleges insufficient facts to hold Insight liable for Shelly Mueller's alleged negligence**

The Binghams assert that Insight, as the employer, is liable under the doctrine of *respondeat superior* for the negligence of its employee, Shelly Mueller.  Under Kentucky law, an employer is vicariously liable for the tortious actions of an employee committed in the course and scope of employment.  *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 50 (Ky. 2008).  Applying this doctrine requires two independent inquiries: (1) whether the employee committed a tortious act; and (2) "whether the employee . . . was acting within the scope of [her] employment at the time of [her] tortious act."  *Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000).  Here, the Complaint fails to show that Mueller acted within the scope of her employment when she committed the allegedly tortious act.

"The question of whether an employee's conduct is within the scope of employment is a question of law."  *Booker v. GTE.NET LLC, et al.*, 350 F.3d 515, 518 (6th Cir. 2003).  Here, the Court must ask whether Mueller was acting within the scope of her employment when she negligently permitted Justice to drive her home.  Under Kentucky law, the focus is whether Mueller was acting to further Insight's interest at that time. *See Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005); *Easterling v. Man-O-War Automotive, Inc.*, 223 S.W.3d 852, 855 (Ky. App. 2007).  If, however, Mueller acted "from purely personal motives . . . which [were] in no way connected with [Insight's] interests, [s]he is considered in the ordinary case to have departed from [her] employment."  *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 52 (Ky. 2008).

Applying this motive-centered test, Mueller was acting solely out of self interest when she asked Justice to drive her home.  As the Binghams state in their Complaint, at

13

approximately 6:00 p.m. on May 12, 2011, Mueller "knew she was 'under the influence of alcohol,' unable to drive herself and *needed to go home to her children*." (Doc. # 1 at 3) (emphasis added).  Because she was so intoxicated, the Complaint alleges that she permitted Justice "to drive [her] Mercedes Benz automobile *for the stated purpose of taking [her] to her home residence* in Crescent Springs, Kentucky." (*Id.*) (emphasis added).  This was entirely a "personal and private trip" which had no connection with Insight's business. *See Easterling v. Man-O-War Automotive, Inc.*, 223 S.W.3d 852, 855 (Ky. App. 2007). Simply put, Mueller's had completed her work-day when she left Barleycorn's; her only motivation in having Justice drive her vehicle was to go home to her children for the evening.

Kentucky case law supports the conclusion that Mueller was acting outside of the scope of her employment.  In 1918, the Kentucky Court of Appeals established that an employee is no longer acting within the scope of her employment when she ends her workday and drives home.  *Keck's Adm'r v. Louisville Gas & Electric Co.*, 200 S.W. 452, 453 (Ky. 1918).  This is particularly so if the employee drives home without intending to perform any duty on behalf of the employer.  *Id.*  Subsequent cases have routinely applied this principle of law in holding that an "an employee . . . commuting home from work is considered to be acting outside the scope of employment." *Bays v. Summit Trucking, LLC*, 691 F. Supp. 2d 725, 732 (W.D. Ky. 2010) (applying Kentucky law).  For example, in *Kuener v. Nat'l Cash Register*, a federal district court applied  the rule announced in *Keck's* and held that an employee was acting outside the scope of his employment when he caused an accident as he was driving home from work for the evening. 43 F.Supp. 62, 63 (W.D. Ky. 1942).  Thus, the law is clear that when an employee departs work for the

14

evening, as Mueller did here, she is no longer acting within the scope of her employment. As a result, Insight cannot be liable for any of Mueller's actions once she departed Barleycorn's.

Despite Kentucky's well-settled law, the Binghams ask the Court to apply North Carolina law in determining whether Mueller was acting within the scope of her employment. In *Chastain*, an employee became intoxicated at a party hosted by his employer and subsequently caused an accident. The district court ruled that the employee was not acting within the scope of his employment when he was driving his vehicle and, therefore, his employer could not be liable for his actions. *Chastain*, 694 F.2d at 962. The Fourth Circuit reversed the district court's finding and held that "the critical time for determining whether the doctrine of respondeat superior should be applied" is when the employee became intoxicated and whether he was acting in furtherance of his employer's interest at that time. *Id.* Although this is the law in North Carolina, the Binghams have cited no authority to suggest that Kentucky would follow this approach. In Kentucky, the relevant focus is on the time the alleged tort was committed – here, Mueller's alleged negligent entrustment. *See Osborne*, 31 S.W.3d at 815. This Court, exercising diversity jurisdiction, sees no justification for extending Kentucky's *respondeat superior* jurisprudence in this instance.

The Binghams assert an additional reason why Mueller was still acting within the scope of her employment. Notwithstanding the conclusion that Mueller was acting out of personal motives when she left Barleycorn's, the Binghams contend that it was "foreseeable by Insight that its employee/agent, Mueller, would be required as part of her assigned duties to travel from her work station to the golf course and then subsequently

15

to Barleycorn's, and lastly back to her work station or home."  (Doc. # 9 at 4).  However, this argument is misguided for several reasons.  First, it is inconsistent with Kentucky law which clearly states that an employee is no longer acting within the scope of her employment when she departs work and goes home for personal reasons.  *See Kech's, supra*. Second, the Complaint never mentions that Mueller worked out of her home or otherwise suggests that she left Barleycorn's to return home for work-related reasons. Instead, as discussed above, the Complaint explicitly states that Mueller left Barleycorn's for the sole purpose of going home to her children.  This did not further the business of Insight.  Finally, and most importantly, Kentucky no longer follows the "foreseeability" test, whereby the Court considers whether an employee's tortious conduct was foreseeable to the employer in determining whether it was taken within the employee's scope of employment.  In *Patterson v. Blair*, the Kentucky Supreme Court explicitly denounced the foreseeability rule it previously announced in *Citizens Finance Co. v. Walton*, 239 S.W.2d 77 (Ky. 1951).  In doing so, the Court adopted the motive-centered test discussed above. As a result, the Binghams' foreseeability argument is without merit.  Because Mueller was acting out of purely personal motives when she asked Justice to drive her home, she was no longer acting within the scope of her employment, and Insight is not liable for her alleged negligence.

## IV.  CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)     Defendant Insight Communications Midwest, LLC's Motion to Dismiss (Doc. # 7) be, and is hereby **GRANTED**; and

16

     (2)     Plaintiffs Deborah and Harold Bingham's claims against Defendant Insight Communications Midwest, LLC are hereby **DISMISSED WITH PREJUDICE**.

     This 12th day of October, 2012.



**Signed By:**

**_David L. Bunning_**

**United States District Judge**

G:\DATA\Opinions\Covington\2012\12-113 MOO granting MTD.wpd